# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| WELK RESORT SALES, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 17-03197-CV-S-SWH |
| SHEENA BRYANT, | ) |
| Defendant. | ) |

## ORDER

### I. BACKGROUND

On May 5, 2017, Sheena Bryant filed suit in Taney County, Missouri, against Welk Resort Group, Inc. (hereafter Welk), Jim White and Steve Pulaski alleging violations of the Missouri Human Rights Act arising out of her employment with Welk. (Doc. #1-1 (*Sheena Bryant v. Welk Resort Group. Inc., et al.,* Case No. 1746-CC00082)) On June 30, 2017, pursuant to the Federal Arbitration Act (FAA), Welk Resort Group, Inc. filed the instant action in this Court, as well as a Motion to Compel Arbitration and to Stay the State Court Action. (Doc. ##1, 2) Paragraph 9 of the Complaint alleges that "[o]n December 11, 2015, in connection with her employment at Welk, Bryant executed an acknowledgement and Arbitration Agreement offered by Welk…." (Doc. # 1 at ¶ 9) In response, Bryant denied this allegation, and in response to paragraph 10 of the Complaint specifically denied signing the Arbitration Agreement. (Doc. # 6 at ¶¶ 9 and 10)

In the motion to compel arbitration, Welk argues that at the time Ms. Bryant was hired, she executed both an acknowledgement of Welk's Arbitration Agreement and the Arbitration Agreement. (Doc. #3, at 2, 4-5) The Arbitration Agreement specifically applies to all employment-related disputes and claims. (Doc. #1, at ¶10) Welk admits that it has been unable to find a signed

Arbitration Agreement. (Doc. #3, at 5)  Nevertheless it points to a Memorandum that contains an acknowledgment of receipt of the Memorandum and the Arbitration Agreement, which was signed by Bryant, as proof that Bryant entered into an arbitration agreement. (Doc. #3, at 5; Doc. #1-2)  Welk argues that the FAA mandates that the parties' arbitration agreement be enforced. (Doc. #3, at 3-4)  Welk further argues that the state court proceeding should be stayed pending arbitration. (Doc. #3, at 6)

Bryant argues that Welk has the burden of showing that there is an arbitration agreement and has failed to do so. (Doc. #7, at 2)  Therefore Bryant requests that this Court deny Welk's Motion to Compel Arbitration.  In response, Welk argues that the Memorandum contains an agreement to arbitrate and that the parties accepted the agreement through their conduct of employing Ms. Bryant. (Doc. #8)

## II. LEGAL ISSUES

### A. Applicable Legal Standards

Pursuant to section 4 of the Federal Arbitration Act, a court, faced with a motion to compel arbitration

> shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 USC § 4.  In determining whether arbitration should be compelled, the court's first task is to determine whether the parties entered into a valid arbitration agreement. Nebraska Mach. Co. v. Cargotec Sols., LLC, 762 F.3d 737, 740 (8th Cir. 2014).  Whether a valid arbitration agreement exists is a matter of state law. Donaldson Co. v. Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th

Cir. 2009). Therefore, Missouri substantive law governs whether the parties entered into a valid arbitration agreement.

As set forth in Clemmons v. Kansas City Chiefs Football Club, Inc., 397 S.W.3d 503 (Mo. Ct. App. 2013), the party seeking to compel arbitration has the burden of proving the existence of a valid and enforceable arbitration agreement. Clemmons v. Kansas City Chiefs Football Club, Inc., 397 S.W.3d 503, 505-06 (Mo. Ct. App. 2013). A valid arbitration agreement must meet the essential elements of a contract under Missouri law. Id. at 506. "The essential elements of a valid contract include offer, acceptance, and bargained for consideration." Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. banc 1988)).

  B. Legal Effect of the Unsigned Arbitration Agreement

This Court will first address whether the unsigned Arbitration Agreement is sufficient to show a valid contract. The Arbitration Agreement provided to the Court by Welk purporting to be that which Bryant signed provides a full description of the claims subject to arbitration, provides a waiver for jury trial and representative/class action proceedings, and provides a detailed procedure for arbitration. (Doc. #1-2, at 6-8) At the end of the document there is a place for the employee to sign and date and a place for Welk to sign and date. (Doc. #1-2, at 8) As noted earlier, Welk is unable to find a signed agreement. The failure to submit a signed agreement, however, is not fatal to Welk's claim. Heritage Roofing, LLC v. Fischer, 164 S.W.3d 128, 134 (Mo. Ct. App. 2005). Nevertheless, Welk must submit some evidence that the parties intended to form a contract. Baier v. Darden Restaurants, 420 S.W.3d 733, 738 (Mo. Ct. App. 2014).

As evidence that the Arbitration Agreement was signed, Welk submitted the Declaration of Lynn Brown, the Human Resources Manager for Welk's Branson location. (Doc. #1-2, at ¶3) According to Brown, "Welk offered arbitration agreements to candidates at its Branson location

3

who sought and were offered employment with the company." (Doc. #1-2, at ¶5) Brown also stated that "[t]he Arbitration Agreement and acknowledgment attached hereto as Tab 1 is a true and accurate copy of the Arbitration Agreement and acknowledgment Welk offered to Sheena Bryant in 2015, which is maintained in her personnel file in the regular course." (Doc. #1-2, at ¶6)

In reviewing Missouri case law, the case of <u>Baier v. Darden Restaurants</u>, 420 S.W.3d 733 (Mo. Ct. App. 2014), is the closest case on point. In <u>Baier</u>, the plaintiff received a booklet describing the defendant's (her employer) dispute resolution process. <u>Baier</u>, 420 S.W.3d at 735. Plaintiff signed an acknowledgement of receipt of the booklet, which included a statement that "I agree as a condition of my employment, to submit any eligible disputes I may have to the company's [Dispute Resolution Process] and to abide by the provisions outlined in the [Dispute Resolution Process]. <u>Id.</u> The booklet contained language that the Dispute Resolution Process was the "sole means for resolving covered employment-related disputes, instead of court actions." <u>Id.</u> The acknowledgment included a line for a manager with the company to sign; however, no one signed the form on behalf of the company. <u>Id.</u> Following a transfer to one of the company's other restaurants, plaintiff signed a second acknowledgement. <u>Id.</u> Again, the form had a line for a manager's signature but no manager signed the form. <u>Id.</u> Plaintiff signed a third acknowledgement form when she was transferred to another restaurant. <u>Id.</u> This time the form did not contain a line for a manager's signature. <u>Id.</u> Shortly after the third transfer, plaintiff stopped working for the company and subsequently filed a charge of sex discrimination and retaliation with the Missouri Commission on Human Rights. <u>Id.</u> at 735-36. Plaintiff then filed suit in state court. <u>Id.</u> at 736. Defendant moved to dismiss or to stay proceedings and compel arbitration. <u>Id.</u> Plaintiff opposed the motion arguing in part that a valid arbitration agreement had not been formed. <u>Id.</u> at 736. The trial court denied the motion. <u>Id.</u>

On appeal, the court noted that the acknowledgment and the booklet "constituted a proposal to enter into a bilateral contract . . . ." Id. at 738. The court noting the lack of a manager's signature, found that the trial court was required to determine whether the offeror intended "to be bound if the unsigned proposal [was] accepted by the offeree." Id. at 739. The only evidence the court could find of an intent to be bound was a claim by the defendant that the offer (the acknowledgment) was meant to mutually bind the parties. Id. Finding such claims to be self-serving, the appellate court held that the trial court could properly find a lack of mutual assent to the arbitration agreement. Id. In so holding, the court stated "we are hard pressed to discern any purpose for placing a signature line for Darden on the First Acknowledgement unless it was to require an authorized signature as a condition of mutual assent." Id.

While the instant action has a different fact pattern, this Court finds that the holding in Baier is instructive. A party seeking to enforce an arbitration agreement must show that there was a valid arbitration agreement. Where the document itself calls for a signature and none is provided and the moving party has not provided any other evidence of assent besides a self-serving claim, this Court may find no mutual assent. The Arbitration Agreement in the instant action was not signed. The Declaration of Lynn Brown does not indicate that the declarant witnessed Bryant signing the Arbitration Agreement. Instead, the declaration merely states that employees were offered the arbitration agreement. (Doc. #1-2, at ¶5) This Court therefore finds that there is a lack of conclusive evidence of mutual assent to the Arbitration Agreement.

    C. <u>Legal Effect of the Signed Memorandum</u>

This Court next turns to whether the Memorandum is a valid contract. The Memorandum contains a brief discussion of arbitration. (Doc. #1-2) There is language in the Memorandum that states "the Company is requiring you to sign the enclosed arbitration agreement that outlines the

5

terms and conditions of this process." (Doc. #1-2) It also contains an acknowledgement which states:

> *Acknowledgment of Receipt of Above Memorandum*
>
> I acknowledge that I have read and understand the above memorandum regarding the arbitration process and the agreement. I understand that the enclosed arbitration agreement, which I am required to sign, provides for arbitration as the exclusive method of resolving all employment-related disputes and claims relating to, regarding, or arising out of or in connection with my employment with the Company, the termination of such employment, or any of the terms, conditions, or benefits of my employment. I understand that the arbitration is binding and final.
>
> I acknowledge that I have been given the opportunity to ask questions about the arbitration process and the arbitration agreement. I understand that the arbitration agreement is a condition of my employment with the Company and that both the Company and I hereby expressly waive the right to pursue all employment-related disputes and claims in any other forum.

(Doc. #1-2, at 5) Only Ms. Bryant's signature appears on the Memorandum. (Doc. #1-2) In fact, there is no signature line for Welk. (Id.) Plaintiff argues that the above language contains the parties' agreement to arbitrate and therefore this Court should compel arbitration and stay the state court action. (Doc. #8, at 2-5)

After thoroughly reviewing the Memorandum and the Arbitration Agreement, this Court finds that questions arise as to whether the Memorandum, standing alone, was intended to be an offer. An offer "'is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Jackson v. Higher Educ. Loan Auth. of Missouri, 497 S.W.3d 283, 288 (Mo. Ct. App. 2016) (quoting Restatement (Second) of Contracts § 24 (1981)). The Memorandum repeatedly discusses the Arbitration Agreement and states that the Arbitration Agreement provides the terms and conditions. Furthermore, the Memorandum repeatedly discusses the requirement that the employee sign the Arbitration Agreement. Finally, Welk has not signed the Memorandum, nor is

there a place for Welk to sign the Memorandum. See Whitworth v. McBride & Son Homes, Inc., 344 S.W.3d 730, 740 (Mo. Ct. App. 2011)(noting that the lack of signature on an arbitration agreement, in conjunction with language in a handbook limiting the company's ability to enter into a contract, shows that the company did not intend for the arbitration agreement to constitute a binding contract). It would, therefore, appear that the Memorandum was not meant to "conclude" the offer and that the Arbitration Agreement was the offer. Therefore, questions arise as to whether the Memorandum, standing alone, constitutes a valid arbitration agreement. Where the making of the arbitration agreement is at issue, the Federal Arbitration Act directs courts to summarily proceed to trial on the issue.

Based on the foregoing, it is

**ORDERED** that the Motion to Compel Arbitration and to Stay the State Court Action, doc. #2, is denied on the basis of the present record. It is further

**ORDERED** that the case will be set for trial on the plaintiff's Petition to Compel Arbitration and Stay State Action, doc. #1, at the earliest date the parties and their witnesses are available.

>                     */s/ Sarah W. Hays*
>                     SARAH W. HAYS
>                     UNITED STATES MAGISTRATE JUDGE